UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                               Case No. 13-cr-20396
                                               Honorable Gershwin A. Drain

v.

TROY TUTT,

       Defendant.
_____/

**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR ISSUANCE OF SUBPOENA DUCES TECUM [#16] AND AMENDING DATES**

**I.     INTRODUCTION**

Presently before the Court is Defendant Troy Tutt's Motion for the Issuance of Subpoena Dues Tecum to Obtain the Computer Records, Personnel Files and Internal Disciplinary Records of Dearborn Police Officers Timothy McHale ("McHale") and Sergio Popescu ("Popescu"), filed on September 10, 2013. This matter is fully briefed and oral argument was held on October 10, 2013. For the reasons that follow, the Court grants Defendant's motion in part.

Defendant is charged in a one-count indictment alleging violation of 18 U.S.C. § 922(g)(1); felon in possession of a firearm. Defendant's present motion seeks an order permitting the issuance of a subpoena duces tecum pursuant to Fed. R. Crim. P. 17(c) for the pretrial production of the personnel records and internal disciplinary records of McHale and Popescu, as well as the name of the City of Dearborn's reporting software and all access logs generated by McHale in connection with Dearborn Police Report #130023336.

## II. FACTUAL BACKGROUND

On May 11, 2013, Dearborn Police Officers, while on patrol at the Fairlane Mall in Dearborn, Michigan, queried the license plate of a Chevrolet Traverse. The query revealed that the vehicle was stolen on April 26, 2013. When four individuals approached and entered the vehicle, officers, including McHale and Popescu, converged upon the Traverse. Popescu claims to have witnessed Defendant "bending over in attempt to conceal an unknown object beneath his seat." The officers argue Defendant was seated in the rear seat behind the driver, under which Popescu claims he retrieved a Glock, Model 27, .409 caliber pistol. Defendant disputes that he was sitting where the officers claim the firearm was located. Once Defendant was arrested and transported to the Dearborn Police station, he was placed in a booking cell, where he allegedly had a conversation with the suspect in the adjoining cell. McHale claims he overheard Defendant making incriminating statements and that he simultaneously drafted a police report memorializing Defendant's statements at or near the time the statements were made. Defendant denies making any incriminating statements.

Defendant's counsel requested *Brady* and *Giglio* material concerning the officers involved in Defendant's arrest, including any relevant impeaching information from the officers' personnel files. *See Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972). However, defense counsel has yet to receive any of the requested information. Defendant argues that while investigating the present matter, it was discovered that McHale was named in a § 1983 lawsuit, *Pryor v. Dearborn Police Department*, No., 05-cv-40184. In *Pryor*, the mother of the decedent, pretrial detainee filed suit claiming that McHale and other Dearborn police officers were deliberately indifferent to the decedent's serious medical needs when he, upon arrest, ingested

enough cocaine and crack to overdose and the defendant-officers refused to provide him with any medical attention despite their knowledge that he had ingested drugs. In denying summary judgment in favor of the defendant-officers, including McHale, the *Pryor* court relied in part on the officers' conflicting versions of what occurred. The case proceeded to trial against McHale and the other officers, and while the jury was deliberating, the parties reached a settlement. Additionally, Popescu has also been named in a civil rights lawsuit alleging excessive force, *Alderwish v. Popescu*, No. 10-cv-14409. In that case, the City of Dearborn made a Rule 68 Offer of Judgment provided the defendant-officers, including Popescu, were dismissed from the action and the plaintiff accepted the city's Rule 68 Offer.

### III. LAW & ANALYSIS

Federal Rule of Criminal Procedure 17(c) authorizes a party to issue a subpoena dues tecum to direct a witness to produce documents in court prior to trial for inspection by the parties and their attorneys. Rule 17(c) is "not intended to provide a means of discovery for criminal cases[,]" rather "its chief innovation [is] to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *United States v. Nixon*, 418 U.S. 683, 698-99 (1974). Rule 17(c)(1) states:

> (1) **In General**. A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c). A party seeking to obtain pretrial document production by means of subpoena duces tecum must show that the information sought is relevant, admissible, and specific. *Id.* at 700.

In *Nixon*, the Supreme Court identified the four requirements a moving party must establish in order for a trial court to issue a subpoena under Rule 17. Specifically, the moving party must show: "(1) the documents are evidentiary and relevant; (2) they are not otherwise procurable, with due diligence, in advance of trial; (3) the party cannot properly prepare for trial without such production and inspection in advance of trial; and (4) the application was made in good faith and is not intended as a fishing expedition." *Id*. at 699-00.

In the instant case, Defendant has requested *Brady* and *Giglio* information, however the Government has to date failed to provide any of the requested material. *Brady* and its progeny require that the government disclose material impeachment evidence. *See United States v. Bagley*, 473 U.S. 667 (1985); *Giglio*, 405 U.S. at 154-55. Defendant contends that the *Brady* and/or *Giglio* information sought by the subpoena is not just relevant, but crucial to his ability to present a defense to the charge against him. Conversely, the Government argues that it will abide by its *Brady* and *Giglio* obligations and produce any such evidence well in advance of trial. The Government further argues that Defendant's Motion fails the *Nixon* test because it is nothing more than an improper "fishing expedition," is not sufficiently specific nor does it seek relevant and admissible material evidence bearing on the issue of guilt or innocence. Thus, the Government asserts Defendant's Motion should be denied.

Upon careful consideration of the parties' briefing, the arguments made during the October 10, 2013 hearing, and the supplementary materials provided by defense counsel requested by the Court during the hearing,[1] the Court finds that Defendant has demonstrated the requested material

---

[1] At the hearing and in its briefing, defense counsel argued that Rule 17(c) subpoenas are "routinely granted" on an *ex parte* basis in this district, however because such orders are issued under seal, those cases were not identified by counsel in her briefing. At the Court's request,

is relevant and admissible, including, but not necessarily limited to the issue of the officers' character for truthfulness under Federal Rule of Evidence 608. Further, these documents are not otherwise procurable reasonably in advance of trial, counsel requires the documents for adequate preparation and the request is made in good faith and not a general "fishing expedition." *Nixon*, 418 U.S. at 699.

Contrary to the Government's argument, the allegations of civil rights violations and misconduct provide more than mere speculation that the files will contain material *Brady* impeachment evidence. Unlike the facts in *Driscoll*, Defendant has demonstrated that McHale's and Popescu's personnel files and disciplinary records may contain evidence material to guilt or innocence because the evidence has a reasonable probability of impacting the jury's ultimate verdict. *See United States v. Driscoll*, 970 F.2d 1472, 1482 (6th Cir. 1992) (rejecting the defendant's argument that his *Brady* rights were violated because he "offered no support for his contention that personnel files might contain information important to his case."). For instance, in denying summary judgment in favor of McHale, the *Pryor* court relied on his contradictory account of the facts giving rise to the decedent's mother's Eighth Amendment claim. There may be

---

counsel hand delivered to chambers a supplementary letter identifying the case numbers and attaching the pertinent orders from those cases on October 15, 2013.

While the Court makes no finding concerning whether Rule 17(c) subpoenas are "routinely considered" on an *ex parte* basis in this district based on the three cases provided in counsel's supplement, the Court notes that in a possession of firearm during a drug crime case, a judge from this district declined to quash a Rule 17(c) subpoena seeking the disciplinary records of the arresting officers. In that case, the Government moved to the dismiss the indictment against the defendant within two months of producing the documents for *in camera* review. In another case from this district, after the judge denied the defendant's motion to quash a subpoena seeking the personnel records of the arresting officer, also a felon in possession case, the defendant was acquitted of the charges after a jury trial.

evidence in McHale's personnel and internal disciplinary files associated with the *Pryor* case that shed light on the issue of his character for truthfulness.

In the instant case, the Government's proof relies almost entirely on the testimony of McHale, who claims to have overheard Defendant making incriminating statements, and the testimony of Popescu, who claims to have seen Defendant reaching underneath the very seat where the firearm was ultimately discovered. Thus, Defendant must be provided timely access to any evidence bearing on the issue of the officers' honesty. Credibility will be a controlling factor in the jury's ultimate conclusion as to whether Defendant possessed a firearm in violation of federal law. Resolution of the competing stories of the officers and Defendant, who denies sitting in the seat where the firearm was discovered or making any incriminating statements, will require evaluation of the officers' credibility.

Lastly, the Court is reluctant to blindly accept the Government's representations that it will timely provide *Brady* and *Giglio* material to defense counsel. In light of the potential untruthfulness of these officers in connection with civil rights violations, and the fast-approaching trial date, currently less than thirty days from the date of this Order, as well as similar to the facts in *United States v. Kiszewski*, where "credibiltiy [w]as the central issue in the case and the evidence . . . consist[ed] of opposing stories presented by the defendant and government agents[,]" pretrial disclosure of the requested materials to the Court *in camera* is required to ensure Defendant's due process rights are honored. *See United States v. Kiszewski*, 877 F.2d 210, 216 (2d Cir. 1989). Accordingly, the Court grants Defendant's Motion for a Rule 17(c) subpoena with respect to McHale's and Popescu's personnel and internal disciplinary files in part and will order their production to the Court for *in camera* inspection. The Court will not, however, order the complete

production of such files as requested by Defendant. Rather, the Court will order the production of the relevant files for the time period of 2004 through the present as the facts giving rise to the civil rights complaints at issue commenced in 2004.

Defendant also seeks the production of the name of the reporting software used by the City of Dearborn's Police Department, as well as any log reports, network logs and audit trials, commonly known as "metadata," generated in connection with McHale's police report #130023336. The Government argues that Defendant's request is "a far-fetched attempt . . . to find something in a place not ordinarily searched to assist in" his defense.

Metadata is electronically stored evidence that describes the "history, tracking, or management of an electronic document." *Aguilar v. Immigration and Customs Enforcement Div.*, 255 F.R.D. 350, 354 (S.D.N.Y. 2008). "It includes the hidden text, formatting codes, formulae, and other information associated with an electronic document." *Id.* Here, Defendant seeks the system metadata which "reflects information created by the user or by the organization's information management system" and can include information regarding "the author, date and time of creation, and the date a document was modified." *Id.*

McHale claims to have overheard Defendant make incriminating statements while simultaneously preparing a police report memorializing Defendant's statements. Because McHale's credibility concerning Defendant's statements will affect the determination of guilt or innocence, Defendant is entitled to pre-trial disclosure of this metadata to corroborate the officer's claims. Such metadata is relevant and admissible concerning McHale's testimony he overheard Defendant making inculpatory statements. Further, the metadata is not otherwise procurable reasonably in advance of trial and counsel requires the information in order to support Defendant's defense and claim that

he never made the incriminating statements as asserted by McHale. Lastly, because the metadata sought does not impact due process considerations in the same manner that personnel and internal disciplinary records do, an *in camera* inspection with respect to the request for metadata is unnecessary. Therefore, the Court grants Defendant's Motion for a Rule 17(c) subpoena with respect to his request for the computer records or "metadata" in its entirety.

**IV.     CONCLUSION**

For the foregoing reasons, Defendant's Motion for Issuance of Subpoena Duces Tecum to Obtain the Computer Records, Personnel Files and Internal Disciplinary Records of Dearborn Police Officers Timothy McHale and Sergio Popescu [#16] is GRANTED IN PART.

Defendant's counsel shall IMMEDIATELY PREPARE A SUBPOENA DIRECTED TO:

> DEPARTMENT OF LAW
> 13615 MICHIGAN AVENUE, STE. 8
> DEARBORN, MICHIGAN 48126-3581

AND ORDERING the production of the following materials to the Court for *in camera* review on or before October 28, 2013: (1) the personnel records and (2) internal disciplinary records of officers Timothy McHale and Sergio Popescu for the time period of 2004 through the present; AND ORDERING the production of the following materials to defense counsel on or before October 28, 2013: (1) the name of the reporting software used by the City of Dearborn Police Department and (2) all access logs for reporting software, including but not limited to log reports, network logs and audit trials, generated by officer Timothy McHale in connection with Dearborn Police Report#130023336.

Additionally, the following dates shall govern in this matter:

Motions *in Limine,* Witness Lists, Proposed Voir Dire, Proposed Jury Instructions, Proposed

Verdict Form and Proposed Final Pretrial Order are due no later than 1:00 p.m. on October 28, 2013.

A Final Pretrial Conference shall be held on October 28, 2013 at 3:00 p.m.

The parties SHALL reconvene before this Court on November 4, 2013 at 3:00 p.m. for the Court's determination concerning its *in camera* inspection of the officers' personnel and internal disciplinary files.

Trial shall commence on November 12, 2013 at 9:00 a.m.

SO ORDERED.

Dated: October 21, 2013  /s/Gershwin A Drain  
GERSHWIN A. DRAIN  
UNITED STATES DISTRICT JUDGE